UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TAMMY GREMILLION                                              CIVIL ACTION

VERSUS                                                        NUMBER: 22-3209

BP EXPLORATION & PRODUCTION, INC., ET AL.                     SECTION: "A" (5)

**ORDER**

Before the Court is Plaintiff's Proposed Motion to Compel Defendants' Documents. (Rec. doc. 138). The BP Defendants oppose Plaintiff's motion (rec. doc. 143), and Plaintiff has filed a reply. (Rec. doc. 147). Having reviewed the pleadings and the case law, the Court rules as follows.

**I.     Background**

This lawsuit arises out of the *Deepwater Horizon* well blow-out and oil spill in 2010. Decedent, Jennifer L. Gremillion,[1] was an oil response worker who worked for the BP Defendants from August to December 2010. The Complaint alleges that Decedent's duties included recovering booms covered in oil and COREXIT – a chemical dispersant – from Barataria Bay, Louisiana, which flows into the Gulf of Mexico. (Rec. doc. 1 at 7). During the relevant times, Decedent allegedly received continuous exposure to BP's toxic substances through her clean-up and response work activities. (*Id.*). The Complaint alleges that, due to her exposure to the oil and other toxic substances, Decedent contracted and was subsequently diagnosed with Chronic Myeloid Leukemia.. (*Id.* at 8). The Complaint further alleges that Decedent's exposure to the substances during the time she worked as a response activity worker for the oil spill was a substantial contributing cause of the above-listed medical condition and Decedent's untimely death on December 16, 2020. (*Id.*).

---

[1] Represented as Plaintiff here by Tammy Gremillion, the administrator of her estate.

Plaintiff ultimately filed this lawsuit on September 9, 2022 pursuant to the Medical Benefits Class Action Settlement Agreement.

Plaintiff, on behalf of Decedent, has now filed this motion in which she challenges the BP Defendants' assertion of the attorney-client and work-product privileges to withhold documents. This is the <u>eighth</u> in a collection of discovery motions filed by the parties in this case, many of which raised the very issues in the motion now before the Court.

## II.      Legal Standard

### A.      The Attorney-Client Privilege

"The attorney-client privilege protects two related, but different communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client." *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. 18-7889, 2024 WL 247063, at *5 (E.D. La. Jan. 23, 2024) (internal citations omitted). In a corporate setting, the attorney-client privilege applies to communications with in-house counsel when the communications are "made for the purpose of giving or obtaining legal advice or services." *Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 26 (N.D. Tex. 2021) (enforcing attorney-client privilege protection). When a document "intertwine[s] business and legal advice," attorney-client privilege protects the communication when the legal advice predominates. *Jolivet*, 340 F.R.D. at 25-26 (internal citations omitted). Merely because a document or an email communication may relate in some way to business activities does not mean that that the primary purpose of the document or email cannot be

2

one of a legal nature relating to litigation. *See Culliver v. BP Expl. & Prod.*, No. 3:21-4942, 2022 WL 19568968, at *5-6 (N.D. Fla. Oct. 13, 2022) (granting the BP Defednants' Motion for a protective order against a party for its use of a privileged document); *see also Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 147 (D. Del. 1977) (an incidental request for business advice "does not vitiate the attorney-client privilege.").

Moreover, who is included in an email communication and in what line (to, from, or cc) is not automatically determinative of the email's privilege status. For example, including a non-client/third party who is a representative of the client on an email communication is not enough to automatically determine a document or communication is not privileged. *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. CV 13-373-SDD-EWD, 2018 WL 2323424, at *8 (M.D. La. May 22, 2018), *aff'd*, No. CV 13-373-SDD-EWD, 2018 WL 5993472 (M.D. La. Nov. 14, 2018) ("The attorney-client privilege is not destroyed by communications by and through a representative of the client regarding the obtaining or rendering of legal advice . . ."); *Washington-St. Tammany Elec. Coop., Inc. v. La. Generating, L.L.C.*, No. 17-405, 2019 WL 2092566, at *5 (M.D. La. May 13, 2019)) ("'[w]hen agents or employees . . . participate as members of a team to provide information and documents to litigation counsel and to obtain from counsel answers to the client's questions, with the primary purpose of effectuating counsel's rendition of legal advice to the client, communications between the client's legal personnel and the third-party agents are privileged, and the privilege is not waived by the communications.'" (citation omitted)). Similarly, the inclusion of an attorney on an email solely by copy does not, alone, indicate a lack of privilege. *Elguezabal v. Church & Dwight Co.*, No. 12-1346, 2013 WL 12304667, at *1 (E.D. La. Nov. 21, 2013) (finding that even though counsel was only copied on the email

3

communications, the communications were sufficiently privileged); *Washington-St. Tammany Elec. Coop.*, Inc. at *5 (same). Finally, there are no exact words required to show that a communication seeks or provides legal services. *Muller v. Bonefish Grill, L.L.C.*, No. 20-1059, 2021 WL 2822374, at *3 (E.D. La. July 7, 2021) ("The attorney-client privilege does not require that communications themselves contain substantive legal advice, nor that they request advice affirmatively. Instead, it requires that the communications be made 'for the purpose of obtaining legal advice.'").

### B. The Work-Product Privilege

Federal Rule of Civil Procedure 26(b)(3)(A) provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party. . . .". Documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" are not discoverable. *St. James Stevedoring Co. v. Femco Mach. Co.*, 173 F.R.D. 431, 434-35 (E.D. La. 1997) (holding that documents created after the "proper date upon which litigation was reasonably anticipated" were privileged and not discoverable); *see also Kansas City S. Ry. Co. v. Nichols Const. Co.*, No. 05-1182, 2007 WL 2127820, at *2 (E.D. La. July 25, 2007) ("This Court[] reads this rule to protect a document or tangible thing from discovery when it was prepared by or for that party or that party's representative and was prepared in anticipation of litigation."). Both fact work product and opinion work product are protected under the Federal Rules. Fact work product "is any material 'prepared in anticipation of litigation or for trial by or for another party or its representative . . . but 'not the mental impressions, conclusions, opinions or legal theories of an attorney . . .'" *Ictech-Bendeck*, 2023 WL 3687427, at *6 (quoting *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693

4

F.2d 1235, 1240 (5th Cir. 1982) (vacating order requiring production of documents claimed to be work product)); *see also Jolivet*, 340 F.R.D. at 34 (holding that the defendant properly withheld as protected work product a meeting invitation regarding ongoing litigation).

As with the attorney-client privilege, courts look to the provenance of the individual document to determine whether work-product protections apply. "To determine whether a document was prepared 'in anticipation of litigation,' the Fifth Circuit applies the 'primary purpose' test." *Muller v. Bonefish Grill, L.L.C.*, 2021 WL 2822374, at *1. The test provides that the work-product privilege can apply where litigation is not imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation. *See id.*; *see also LaSalle Bank N.A. v. Mobile Hotel Properties, L.L.C.*, No. 03-2225, 2004 WL 902169, at *6 (E.D. La. Apr. 23, 2004), *modified*, 2004 WL 1238024 (E.D. La. June 3, 2004) (citing *United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir. 1981) (concluding "that litigation need not necessarily be imminent, as some courts have suggested, as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.")).

The work-product doctrine recognizes that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation of trial. The doctrine protects material prepared by agents for the attorney as well as those prepared by the attorney himself." *Woodland v. Nalco Chem. Co.*, No. 01-3337, 2003 WL 22928808, at *3 (E.D. La. Dec. 8, 2003) (quoting *United States v. Nobles*, 422 U.S. 225 (1975)). Accordingly, the absence of an attorney on an email, or the fact that a document was not authored by an attorney, does not imply a lack of work-product protection. *See In*

5

*re Nw. Senior Hous. Corp.*, 661 B.R. 345, 359 (Bankr. N.D. Tex. 2024) ("[T]he federal work product doctrine provides for protection of documents and tangible things prepared by or for a party or that party's representative 'in anticipation of litigation or for trial,' whether those materials were prepared by the attorney or by agents of the attorney.").

**III.     Law and Analysis**

Plaintiff's challenge to the BP Defendants' invocation of privilege involves three categories of documents: (1) documents to or from a BP Defendants' contractor, Paul Hewett; (2) documents relating to the BP Defendants' monitoring and sampling data; and (3) documents associated with the BP Defendants' participation in the Operational Science Advisory Team ("OSAT"). The BP Defendants produced non-privileged documents relevant to each of these three categories but withheld others on the basis of privilege and provided Plaintiff with a thorough privilege log. (Rec. doc. 138-4). Plaintiff contends that these categories of documents are not entitled to privilege regardless whether they contain legal advice. Plaintiff maintains that no document concerning the oil spill response can be withheld as privileged because the documents involved technical subjects, which Plaintiff describes as the "ordinary course of business by an oil company." (Rec. doc. 138-1 at 12).

**A.     Documents to or from the BP Defendants' Contractor, Paul Hewett**

Paul Hewett is a former government contractor later hired by the BP Defendants, who recognize that Hewett performed both privileged and non-privileged work for them. The BP Defendants produced all non-privileged documents by Hewett to Plaintiff. At his deposition, however, Hewett specifically testified that he performed some of his work at the direction of the BP Defendants' attorneys. (Rec. doc. 143-1 at 36, 81-82, 120). The BP Defendants withheld these documents on the ground of privilege. Plaintiff essentially

6

maintains that Hewett's dual role precludes any privilege protection because his work was performed in the ordinary course of business.

Plaintiff concentrates on the fee agreement between Hewett and the BP Defendants, arguing that nothing in the contract contemplated legal work. Plaintiff's argument misses the mark. The attorney-client and work-product privileges are not controlled by the terms of a contract, but by the nature of the work performed. To determine whether the work-product privilege shields a document from production, the Court need only find that the motivating purpose behind its production was in "anticipation of litigation." *See Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 418 (W.D. Tex. 2009). Documents prepared for mixed purposes – including regulatory compliance and legal strategy – are protected when legal considerations are a primary purpose. *See In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 798 (E.D. La. 2007) ("When these non-legal services are mixed with legal services it does not render the legal services any less protected by the privilege. In fact, they both are protected when they are inextricably intertwined."). Accordingly, even had Hewett been conducting his work in the ordinary course of business, the work-product privilege would extend to any documents that were created in anticipation of litigation. Even Plaintiff recognizes this, when she cites to a privilege log entry titled "[d]raft industrial hygiene analysis *presented to attorneys for the purpose of legal review*." (Rec. doc. 138-1 at 14) (emphasis added). Plaintiff maintains that "[k]eeping attorneys in the loop does not make a document privileged; sending information for attorney review does not constitute attorney-client privilege if the communications relate to non-legal activity." (*Id.*). But such an argument ignores reality. Day-to-day communications between a client and his attorney need not relate to "legal activity." Indeed, that is the very purpose of retaining an attorney.

7

Everyone in this profession knows that clients – whether they're knowledgeable in the law or not – communicate non-legal activities and facts to their attorneys so the attorneys can determine how the information fits within their particular legal strategy. That does not deprive the client of his or her privilege in those communications.

This is not the first time that Plaintiff's counsel has raised the argument that a non-party's dual role precludes protection by the attorney-client and work-product privileges, nor is it the first time that a court has rejected it. *See Culliver v. BP Expl. & Prod., Inc.*, Case No. 3:21cv4942, 2022 WL 19568968, at *6 (N.D. Fla. Oct. 13, 2022). There, in addressing whether the defendants' retained expert's dual purpose precluded any protection by the work-product privilege, the court held:

> Furthermore, the fact Brown worked for the [Unified Area Command] and provided information to the government before transitioning to [defendants' natural resource damage assessment] work does not alter this conclusion. Courts have recognized "[i]t is possible for a witness to wear two hats: one as a specially employed expert in anticipation of litigation and one as an ordinary witness." *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 235 F.R.D. 703, 705 (M.D. Fla. 2006) (citation omitted). Plaintiff is entitled to question Brown regarding his work for the UAC – which Plaintiff did at the July 15 deposition – but Plaintiff is not entitled to question Brown regarding the NRDA work he performed for BP in anticipation of litigation.

*Id.* The BP Defendants retained Hewett in anticipation of litigation to perform consulting work with the BP Defendants' attorneys. Said work product is thus protected by the privilege.

Further, the Court cannot find – on the basis of Plaintiff's generic and conclusory argument – that the BP Defendants withheld factual data in privileged documents. The underlying breathing zone and other factual data that Plaintiff seeks has been public for years and has been the subject of extensive fact, corporate, and expert discovery. *Edward Wisner Donation v. BP Expl. & Prod.*, No. 14-1525, 2015 WL 7079141 at *16 (E.D. La. Nov.

8

13, 2015) (noting the publicly-available data regarding the oil spill response). For the foregoing reasons, the Court finds that Hewett's work product is privileged.

    **B.    Documents Relating to BP's Monitoring and Sampling Data**

The second category of documents that Plaintiff seeks contain strategy discussions related to sampling and monitoring. Plaintiff argues – again – that these communications occurred in the ordinary course of business. She also contends – again – that the communications involve underlying factual information. This Court has heard these arguments before. Indeed, both this Court and the Northern District of Florida have acknowledged the privileged nature of the BP Defendants' work with third-party consultants surrounding monitoring and sampling data. *See* Rec. doc. 89; *Culliver*, 2023 WL 11992401, at *3 ("BP's work with its consultants in determining what data would be collected, how the data would be collected, or the consultants' analysis of the data is privileged.").

That the BP Defendants anticipated litigation as a result of the oil spill is well-established and cannot seriously be challenged. *Culliver*, 2022 WL 19568968, at *5 ("Indeed, before Brown began such work, the United States and several states had filed civil actions against BP for natural resource damages under the OPA."). Plaintiff argues that the BP Defendants would have engaged in sampling and monitoring whether litigation followed from the oil spill or not. This is not a serious argument – litigation against BP following this disaster was the certainty of certainties. That inevitable litigation took many forms immediately after the spill – including personal-injury lawsuits related to alleged exposures to toxic substances. In this regard, it suffices to observe that Plaintiff is re-urging a failed argument that has already been squarely addressed by the Northern District

of Florida District Court. *Frassetti v. BP Expl. & Prod., Inc.*, No. 3:21CV551, 2023 WL 4988887, at *3 (N.D. Fla. Aug. 3, 2023), *opinion clarified*, No. 3:21CV551, 2023 WL 8798101 (N.D. Fla. Sept. 6, 2023) (rejecting Plaintiff's argument that an email was not protected by the attorney-client privilege because the BP Defendants had a business purpose in collecting industrial hygiene data and the email primarily related to operational details, not legal advice, and finding that "[the email] contains an attorney's mental impressions regarding the status of various workstreams and it was not prepared in response to a regulatory duty."); *cf. Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252 (3d Cir. 1993) (finding that a report commissioned by corporate counsel to test emissions was prepared in anticipation of litigation and was not routine exposure record necessary for OSHA to carry out its enforcement and other regulatory functions); *In re Denture Cream Prods. Liab. Litig.*, 2012 WL 5057844, at *18 (S.D. Fla. Oct. 18, 2012) (while "advice from counsel related to the business determinations for purposes of ensuring regulatory compliance likely would not be protected by either the attorney-client or work product doctrine, when that advice is dispensed, not in the regular course of business, but in response and/or in contemplation of litigation, the protection may apply"). Plaintiff's counsel did not appeal the *Frassetti* decision, and this Court finds no reason to vary from it.

The documents Plaintiff seeks contain communications with or involving attorneys discussing strategy associated with monitoring and sampling or documents that include attorney comments or revisions. The privilege log reveals that the counsel involved include outside attorneys with Kirkland & Ellis and Arnold & Porter along with the BP Defendants' in-house attorneys James Pickett, Nathan Block, and Donna Ward. (Rec. doc. 138-4). Mike Taylor and Dan Zbinden were former employees of the BP Defendants

10

rehired to assist with the response. (*Id.*). The Court finds that these documents fall within the purview of the attorney-client privilege and/or the work-product privilege. Plaintiff maintains that the privilege does not automatically attach to in-house counsels' communications regarding monitoring and sampling. Once again, this argument has already been rejected. *Frassetti*, 2023 WL 4988887, at *4 ("Finally, Plaintiff makes a big issue of the fact that Pickett was in-house, rather than outside counsel. While it may be more difficult sometimes to ascertain when in-house counsel is wearing a business hat versus a legal hat, the analysis as to whether a communication is privileged or protected by work product is no different. As Judge Jones noted in *In re Abilify*, 2017 WL 6757558, at * 9 (N.D. Fla. Dec. 29, 2017), 'simply because a lawyer is involved with a business related issue does not necessarily mean the communication is not privileged.'").

The only relevant question for each and every document that Plaintiff seeks is whether it contains protected legal advice or attorney work product, not its underlying topic. *See Slocum v. Int'l Paper Co.*, 549 F. Supp. 3d 519, 524 (E.D. La. 2021) (Fallon, J.) (citing *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 797 (E.D. La. 2007)) ("In order for attorney-client privilege to apply, legal advice must be the primary purpose of the communication."). The certitude of litigation after the oil spill rendered legal advice necessary as soon as practicable. "The response to this oil spill was unprecedented in size and complexity." *In re Oil Spill by the Oil Rig Deepwater Horizon*, 148 F. Supp. 3d 563, 570 (E.D. La. 2015). Considering the magnitude of the spill, the Court concludes that counsel's involvement in these technical decisions was not to manage any technical aspects or reactions but to advise on the legal implications of these reactions in response to the particular circumstances and guaranteed future litigation.

11

Plaintiff further maintains that she needs all communications surrounding monitoring and sampling of data to challenge the ultimate use of the data. Under Plaintiff's theory, these communications all contain "underlying facts and data." Again, this argument has been rejected. Courts have affirmed the privileged nature of the workstreams associated with data collected by Exponent and Stantec. *See* Rec. doc. 89 (Stantec); *Culliver*, 2023 WL 11992401, at *1 (Exponent). The ultimate data associated with the response has been public for many years and relied on by numerous academic papers. Plaintiff's apparent need for the legal discussions that involved the collection is belied by prior court decisions and the availability of such data to her in the public sphere.

### C. Documents Associated With the BP Defendants' Participation in the OSAT

Finally, Plaintiff challenges the withholding of documents related to the BP Defendants' work with the OSAT reports. These reports were commissioned by the Federal On Scene Coordinator to evaluate various aspects of the oil spill's impact on beaches and public health. Courts have recognized that "BP's participation in the creation of the OSAT reports does not preclude it from having privileged conversations regarding issues addressed in the reports." *Culliver*, 2023 WL 11992401, at *4.

Here, all of the challenged documents involve the participation of the BP Defendants' in-house attorneys, namely, James Pickett, Jean Martin, Nathan Block, Farley Burge, Stephen Palmer, and Donna Ward. In *Culliver*, the Florida District Court affirmed the BP Defendants' claim of privilege, finding that "internal confidential communications" included "comments and materials provided to counsel about draft OSAT reports." No, 21-4942, 2023 WL 11992401, at *4. That reasoning applies here. The BP Defendants' in-

12

house counsel were involved in legal analysis associated with the OSAT reports and the related data involved in that analysis. The documents were properly withheld.

**IV.    Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Proposed Motion to Compel Defendants' Documents (rec. doc. 138) is **DENIED**.

New Orleans, Louisiana, this __8th__ day of _____ April _____, 2025.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**