UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TAMMY GREMILLION, on behalf of               CIVIL ACTION
the ESTATE OF JENNIFER L.
GREMILLION,

VERSUS                                        NO: 22-3209

BP EXPLORATION & PRODUCTION                   SECTION: "A" (5)
INC. and BP AMERICA PRODUCTION
COMPANY

## <u>ORDER AND REASONS</u>

The following motions are before the Court: (i) **Plaintiff's Objections to Magistrate Judge's Order Denying Motion to Compel (Rec. Doc. 155)**; and (ii) **Plaintiff's Motion for Leave to Permit Plaintiff's Experts' Rebuttal Reports (Rec. Doc. 167)**.[1]

This order and reasons assumes familiarity with this case and recounts only those facts necessary to resolve the pending motions. In short: this case arises out of the death of Jennifer Gremillion—an oil response worker employed by BP in the aftermath of the *Deepwater Horizon* well blow-out and oil spill in 2010.[2] Her lawsuit alleges she contracted and was subsequently diagnosed with Chronic Myeloid Leukemia as a result of her exposure to the oil and other toxic substances, including a chemical dispersant called COREXIT.[3]

---

[1] The motions, filed by Plaintiff Tammy Gremillion, proceeding individually and as personal representative of the estate of Jennifer L. Gremillion, were respectively noticed for submission on May 14, 2025, and June 25, 2025. The defendants, BP Exploration & Production, Inc. and BP America Production Company (collectively, "BP") oppose the motions.

Plaintiff requested oral argument, but the Court is unpersuaded that it is necessary to resolve the issues before it. Accordingly, the motions are each considered on the briefs.

[2] Rec. Doc. 153, at 1.

[3] Rec. Doc. 153, at 1. She filed suit on September 9, 2022, pursuant to the Medical Benefits Class Action Settlement Agreements.

## I.    Plaintiff's Objections to the Magistrate Judge's Order Denying Her Motion to Compel

On March 12, 2025, Plaintiff filed the motion to compel that underlies the objections presently before the Court.[4] The motion contested BP's designation of certain documents as protected under the work product doctrine or the attorney-client privilege.[5] It asserted that BP withheld "highly relevant documents that directly relate to what Plaintiff must prove at trial – Plaintiff's level of exposure to toxicants";[6] and contended that BP did so under the guise of "funnel[ing] all sensitive communications pertaining to sampling data through counsel in an effort to insert BP's counsel into scientific, technical, and non-legal [Industrial Hygiene] workstreams."[7]

As explained in her objections before this Court,

> The dispute centers on BP's categorical assertions of privilege and Plaintiff's challenge to twenty-seven documents, which can be organized into three topic areas: (1) documents related to BP's participation and creation of the OSAT reports; (2) documents related to Industrial Hygiene data, including BP's biasing of the data as well as internal monitoring and sampling validation protocols, and (3) documents related to work performed by the Industrial Hygienist, Dr. Paul Hewett.

(Rec. Doc. 155-1, Pl.'s Objs. to Mag. J.'s Ord. Den. Mot. to Compel, at 1–2 (footnotes omitted)). The central argument of the motion boils down to the contention that BP "cannot now fairly or consistently assert air monitoring data was collected for the *primary purpose* of fending off future litigation."[8]

---

[4] *See* Rec. Doc. 138.

[5] Rec. Doc. 138-1, at 1–4.

[6] Rec. Doc. 138-1, at 9.

[7] Rec. Doc. 138-1, at 8.

[8] Rec. Doc. 138-1, at 8; *see also id.* at 7 ("Under the primary purpose test, privilege requires demonstrating 'the primary motivating purpose behind the creation of the document [or communication] was to aid in possible future litigation.'" (quoting *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000)).

BP opposed the motion to compel, noting that it re-urged arguments previously asserted in this matter and in cases before other district courts,[9] and presented three main arguments in opposition: first, Dr. Hewett performed certain work at the direction of BP attorneys in anticipation of litigation, and such work has been properly designated as privileged work product;[10] second, "[t]he challenged [Industrial Hygiene] documents involve either communications with or involving attorneys discussing strategy associated with monitoring and sampling or documents that include attorney comments or revisions";[11] and third, BP's original contributions to the Operational Science Advisory Team ("OSAT") reports does not preclude it from having privileged conversations regarding issues addressed in the reports.[12]

After considering the parties' arguments, Magistrate Judge North denied the motion for the following reasons: first, BP retained Mr. Hewett in anticipation of litigation to perform consulting work with BP's attorneys, and said work product is protected by the privilege despite the fact that he also performed non-privileged work for BP;[13] second, the documents relating to BP's monitoring and sampling data are protected under privilege despite BP's counsel's involvement because the involvement was not for the purpose of "manag[ing] any technical aspects or reactions but [instead] to advise on the legal implications of these reactions in response to the particular circumstances and guaranteed future litigation";[14] and third, the documents relating to the OSAT

[9] Rec. Doc. 143, at 1–2.

[10] Rec. Doc. 143, at 10.

[11] Rec. Doc. 143, at 12.

[12] Rec. Doc. 143, at 14.

[13] Rec. Doc. 153, at 6–9.

[14] Rec. Doc. 153, at 9–12.

reports and their underlying data were properly withheld despite the BP in-house counsel's involvement in creating the documents.[15] Plaintiff's appeal to this Court followed.

### i.    Relevant Law

#### A.    *Attorney-Client Privilege*

"The attorney-client privilege protects two related, but different communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client." *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. 18-7889, 2024 WL 247063, at *5 (E.D. La. Jan. 23, 2024) (Morgan, J.) (quoting *Earl v. Boeing Co.*, No. 4:19-507, 2021 WL 963405, at *2 (E.D. Tex. Mar. 15, 2021), vacated in part, on other grounds, by *In re Boeing Co.*, No. 21-40190, 2021 WL 3233504 (5th Cir. July 29, 2021)).

The applicability of the attorney-client privilege "is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents," *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury*, 768 F.2d 719, 720 (5th Cir. 1985),[16] and its purpose is to encourage candid communications between the client and their counsel. *Upjohn Co. v. United States*, 449 U.S. 383, 390–91 (1981). A result of this purpose is that relevant information is withheld from the fact-finder; accordingly, it must be (i) "interpreted narrowly so as to 'apply only where necessary to achieve its purpose,'" *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (cleaned up) (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)), and

---

[15] Rec. Doc. 153, at 12–13.

[16] *See also King v. Univ. Healthare Sys., L.C.*, 645 F.3d 713, 720–21 (5th Cir. 2011) (quoting *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994) for the same proposition).

(ii) "specifically asserted with respect to particular documents." *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982).

A central component of a privileged communication is that it is "made in confidence for the purpose of obtaining legal advice from the lawyer." *El Paso Co.*, 682 F.2d at 538 (internal quotations and citation omitted); *see also Hodges*, 768 F.2d at 720. The effect of this is that not all communications between a client and their attorney are protected. *United States v. Pipkins*, 528 F.2d 559, 562–63 (5th Cir. 1976) (stating that the attorney-client privilege "is not a broad rule of law which interposes a blanket ban on the testimony of an attorney"). Thus, a party invoking the attorney-client privilege bears the burden of demonstrating its applicability and must show:

> (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.

*EEOC*, 876 F.3d at 695 (quoting *Robinson*, 121 F.3d at 974)).

When a corporation is involved (as is the case here), courts have recognized that the attorney-client privilege analysis becomes increasingly complex. *See, e.g.*, *Ictech-Bendeck*, 2024 WL 247063, at *6; *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 38 (E.D.N.Y. 2013); *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009) (citing *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978)); *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 797 (E.D. La. 2007) (Fallon, J.). While not binding on this Court, it finds the following explanation, provided by the court in *Stoffels v. SBC Communications, Inc.*, persuasive:

> The attorney-client privilege applies in a corporate setting. However, because in-house counsel has an increased level of participation in the day-to-day operations of the corporation, it is more difficult to define the scope of the privilege when a communication is made to in-house counsel. Thus, in such a setting, the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions. The critical

> inquiry is, therefore, whether any particular communication facilitated the rendition of predominantly legal advice or services to the client.

263 F.R.D. 406, 411 (W.D. Tex. 2009) (citations omitted); *see also Muller v. Bonefish Grill, LLC*, No. 20-1059, 2021 WL 2822374, at *3 (E.D. La. July 7, 2021) (Vance, J.) ("The attorney-client privilege does not require that communications themselves contain substantive legal advice, nor that they request advice affirmatively. Instead, it requires that the communications be made 'for the purpose of obtaining legal advice.'" (citations omitted)).

### B. Work Product Doctrine

Rule 26(b)(3) of the Federal Rules of Civil Procedure governs the disclosure of documents prepared in anticipation of litigation and provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A); *see also Adams v. Mem'l Hermann*, 973 F.3d 343, 349–50 (5th Cir. 2020). The work product doctrine protects two categories of materials: ordinary work-product and opinion work product. *See generally Upjohn Co.*, 449 U.S. at 401 (holding that the standard applied to attorneys' mental notes on the oral communications with a witness represent mental processes and cannot be disclosed based on a simple showing of substantial need and inability to obtain the equivalent without undue hardship).

When the privilege applies, it "insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's

inquiries," *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991), and "protects materials prepared in anticipation of litigation, whether those materials were prepared by the attorney or by agents of the attorney.*" In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979). But, "[l]ike the attorney-client privilege, the work-product doctrine 'protects only the [attorney's work product] and not the underlying facts.'" *Adams*, 973 F.3d at 350 (quoting *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982)). The burden to establish that a document is work product falls on the party asserting the privilege. *Hodges*, 768 F.2d at 721.

To determine whether a document was prepared "in anticipation of litigation," the Fifth Circuit applies the "primary purpose" test. The test provides that the work-product privilege "can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (emphasis added) (quoting *El Paso Co.*, 682 F.2d at 542). Materials assembled in the ordinary course of business are typically excluded from the work-product privilege. *El Paso Co.*, 682 F.2d at 542. "If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation." *Fitch v. Entergy Corp.*, No. 17-1548, 2019 WL 1490105, at *4 (E.D. La. Feb. 11, 2019) (citation omitted).

### C. *Privilege Log*

Rule 26(b)(5) outlines the procedure for claiming privilege or protecting trial-preparation materials and provides:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and

> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

The test for assessing the adequacy of a privilege log is whether the privilege log's description of each document and its contents "provide sufficient information to permit courts and other parties to test the merits of the privilege claim." *EEOC*, 876 F.3d at 697 (citations omitted). "Typically, a privilege log must identify each document and provide basic information, including the author, recipient, date and general nature of the document." *In re Papst Licensing*, No. MDL 1298, 2001 WL 1135268, at *2 (E.D. La. Sept. 19, 2001) (quoting *SEC v. Thrasher*, No. 92-6987, 1996 WL 125661, at *1 (S.D. N.Y. Mar. 20, 1996) (cleaned up)); *see also EEOC*, 876 F.3d at 697 ("[T]he log must as to each document . . . set forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed.") (quoting *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) (cleaned up)). However, "the courts retain some discretion to permit less detailed disclosure in appropriate cases." *In re Papst Licensing*, 2001 WL 1135268, at *2.

## ii.   Standard of Review on Appeal

In this District, Local Rule 72.1 automatically refers certain pretrial motions, including "all civil discovery motions," to the assigned magistrate judge for resolution. L.R. 72.1(A). Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72.2, non-dispositive pretrial matters decided by a magistrate judge may be appealed to a district judge. In such instances, "[t]he district judge must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

> Under this standard, factual findings are reviewed for clear error, which is present when "the reviewing court upon examination of the entire evidence is left with the definite and firm conviction that a mistake has been committed." Conclusions of law should be overturned when the magistrate "fails to apply or misapplies relevant statutes, case law, or rules of procedure." For issues that are committed by law to a judge's discretion, such as the resolution of discovery disputes, the magistrate's rulings are reviewed for abuse of discretion.

*Kiln Underwriting Ltd. v. Jesuit High Sch.*, No. 06-4350, 2008 WL 4724390, at *2 (E.D. La. Oct. 23, 2008) (Vance, J.) (citations omitted).

The controversy before the Court concerns the application of the attorney-client privilege and the work product doctrine, each of which is a "fact question to be determined in light of the purpose of the privilege and guided by judicial precedents." *Adams*, 975 F.3d at 348 (explaining that the attorney-client privilege and work product doctrine share the same standard of review). Accordingly, the Court reviews the "factual findings underlying [the] privilege ruling[s] for clear error and the application of legal principles de novo." *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010) (quoting *United States v. Auster*, 517 F.3d 312, 315 (5th Cir. 2008)).

### iii.    Analysis

On April 22, 2025, Plaintiff filed her Objections to Magistrate Judge's Order Denying Motion to Compel (Rec. Doc. 155-1). Through her motion she contends as follows: first, that the Order "conflicts with precedent requiring document-by-document privilege analysis under the 'primary purpose' test"; second, "the Order effectively extended permission for BP to use privilege as both 'sword and shield,'" which serves to "functionally create[] new privilege rules unique to the Deepwater Horizon litigation that are inconsistent with precedent"; and third, "the Magistrate

Judge [mis]construed Plaintiff's argument."[17] Regarding her third objection, she clarified to the Court as follows:

> Mislead by BP's briefing, the Magistrate Judge construed Plaintiff's argument into one that certain categories of information can *never* be privileged "regardless of whether they contain legal advice" or that "no document concerning the oil spill response can be withheld as privileged." Plaintiff's argument, however, was that the categories of challenged documents were not *per se* privileged and that BP failed to meet its burden. Plaintiff only moved to compel twenty-seven documents—a small portion of BP's logs. And Plaintiff focused on the evidence that the primary purpose was not for legal advice, as well as exceptions to the privilege doctrines.

(Rec. Doc. 155-1, Pl.'s Objs. to Mag. J.'s Order Den. Mot. to Compel, at 4 (footnotes omitted)).

In support of her objections, she offered the following four-pronged argument: first, the Order failed to apply the correct legal standard for evaluating attorney-client privilege and work product privilege claims;[18] second, the Order erroneously applied attorney-client privilege;[19] third, the Order's work product analysis was clearly erroneous;[20] and fourth, if BP's documents are work product, then exceptions apply.[21]

The Court has consolidated Plaintiff's argument and addressed it in two parts. Part A addresses the merits of her first three arguments, which concern the Magistrate Judge's analysis of the privileges asserted.[22] Part B addresses her fourth argument—that, if BP's documents are work product, then exceptions apply.

---

[17] Rec. Doc. 155-1, at 3–4.

[18] *See* Rec. Doc. 155-1, at 6–17.

[19] *See* Rec. Doc. 155-1, at 17–18.

[20] *See* Rec. Doc. 155-1, at 18–21.

[21] *See* Rec. Doc. 155-1, at 24–25.

[22] That the Order (i) failed to apply the correct legal standard for evaluating privilege claims, (ii) erroneously applied attorney-client privilege, and (iii) erroneously applied the work product analysis.

### A. Assessment of the Order's Privilege Analyses

The Court considers the merits of Plaintiff's objections in the context of the three topic areas she outlined in her appeal to this Court: (1) documents related to BP's participation and creation of the OSAT reports; (2) documents related to Industrial Hygiene data, including BP's biasing of the data as well as internal monitoring and sampling validation protocols, and (3) documents related to work performed by the Industrial Hygienist, Dr. Paul Hewett.[23]

### 1. OSAT Report Communications

The first topic area outlined in Plaintiff's appeal comprises "documents related to BP's participation and creation of the OSAT reports."[24] The Order states that "*all* of the challenged documents involve the participation of the BP Defendants' in-house attorneys,"[25] and adopts Magistrate Judge Hope Cannon's reasoning in her order denying the plaintiff's motion to compel in *Culliver v. BP Exploration & Production, Inc.*, No. 3:21-4942, 2023 WL 11992401, at *4 (N.D. Fla. Oct. 24, 2023).[26] The Order explains that, "[i]n *Culliver*, the Florida District Court affirmed the BP Defendants' claim of privilege, finding that 'internal confidential communications'

---

[23] Rec. Doc. 155-1, at 1–2 (footnotes omitted).

[24] Rec. Doc. 155-1, at 1–2.

[25] Rec. Doc. 153, at 12 (emphasis added).

[26] Given the Magistrate Judge's heavy reliance on the *Culliver* decision in this case, the Court briefly addresses the underlying privilege dispute there.

On June 14, 2023, the *Culliver* plaintiff filed his first motion to compel, arguing that seven categories of documents belonging to a BP consultant ("Exponent") were not privileged. These categories included, but were not limited to: transmittal emails and letters, chemistry laboratory communications, government communications, and OSAT reports and drafts. *Culliver*, 2023 WL 11992401, at *1.

After filing his first motion, the parties conferred, and BP adjusted its privilege designations on multiple occasions based on the court's guidance and for the purpose of more efficiently facilitating an *in camera* review. *Id.* Four months later, the plaintiff submitted his second renewed motion to compel, which challenged BP's privilege designations for 43 documents that fell into roughly three categories: (1) communications related to OSAT; (2) communications related to laboratories; and (3) communications regarding technical scientific data. *Id.* at *2.

After conducting an *in camera* review of the challenged documents, and considering the parties' submissions and the relevant law, the Court found all 43 documents were protected by either the attorney client or work product privileges. *Id.*

included 'comments and materials provided to counsel about draft OSAT reports,'" and notes that the *Culliver* court recognized that "BP's participation in the creation of the OSAT reports does not preclude it from having privileged conversations regarding issues addressed in the reports."[27]

On appeal, Plaintiff complains that "[t]he Order erred by failing to evaluate the specific OSAT communications challenged."[28] The Court disagrees. Before adopting Judge Cannon's reasoning, the Magistrate Judge expressly stated that "all of the challenged documents involve the participation of the BP Defendants' in-house attorneys, namely, James Pickett, Jean Martin, Nathan Block, Farley Burge, Stephen Palmer, and Donna Ward";[29] and the record bears that out.

Through her motion, Plaintiff sought to compel the following OSAT related communications on the basis that they "do not appear privileged": (1) BP-JGremillion_00043897; (2) BP-JGremillion_00043719; (3) BP-JGremillion_00047744; (4) Privilege Log Entry 84; (5) BP-JGremillion_00047651; and (6) BP-JGremillion_00047741.[30] But a review of the record as a whole, including the privilege log and BP's response in opposition to Plaintiff's motion, establishes that BP invoked privileges for the very reasons that the Order provides.[31] And, despite Plaintiff's contention to the contrary,[32] the Order's findings regarding the privilege log comport with those of other courts in this Circuit.

Take, for example, the privilege log at issue in *Firefighters' Retirement System v. Citco Group Limited*, No. 13-373, 2018 WL 305604, at *6 (M.D. La. Jan. 5, 2018). There, the magistrate judge noted:

---

[27] Rec. Doc. 153, at 12 (quoting *Culliver*, 2023 WL 11992401, at *4).

[28] Rec. Doc. 155-1, at 21.

[29] Rec. Doc. 153, at 12.

[30] *See* Rec. Doc. 138-1, at 28–30.

[31] *See* Rec. Doc. 138-4; Rec. Doc. 143, at 15 n.34.

[32] Rec. Doc. 155-1, at 14–15.

The entries reflected in these Exhibits show the date of the document, who the document was from, who received the document, and who (if anyone) was carbon copied. Additionally, each entry includes a description of the document on which privilege is claimed. These descriptions do more than simply state "legal advice." For each entry, the subject matter of the purported legal advice is also provided. For example, the first entry on Exhibit 1 is "email to counsel requesting legal advice re: legal propriety of FIA Leveraged subscription documents." Descriptions on Exhibit 1 also include "email chain with counsel reflecting and requesting legal advice re: the requirements of the FIA Leveraged offering memorandum and articles of association," "email chain with counsel reflecting and requesting legal advice re: Project Ranier draft disclosure letter and outstanding details on share purchase agreement," "email to counsel requesting legal advice re: draft response letter to SEC information request of Fletcher funds," and "email with counsel reflecting and requesting legal advice re: interpretation of Offering Memorandum concerning investment manager requirements related to NAV backlog.

*Id.* (footnotes omitted).

Consider also the privilege logs that courts in this Circuit have found to be subject to the granting of a motion to compel. In *Slocum v. International Paper Company*—a case which Plaintiff cites in support of her arguments[33]—the privilege log before Judge Fallon listed each participant in the correspondences, but the narrative description was insufficiently broad. 549 F. Supp. 3d 519, 525 (E.D. La. 2021) ("[F]or the purpose of seeking legal advice.").[34] The court found that the log descriptions were deficient in that they gave "no factual basis for determining the application of privilege from the log alone." *Id.* In granting the motion to compel, the court explained that "[t]he test for assessing the adequacy of a privilege log is whether the privilege log's description of each document and its contents 'provide sufficient information to permit courts and other parties to test

---

[33] *See* Rec. Doc. 155-1, at 12

[34] *See Slocum*, No. 2:16-12563, Rec. Doc. 333-9 ("International Paper Company's Privilege Log"), at 2 ("Correspondence between . . . regarding correspondence with IP's counsel . . ., for the purposes of seeking legal advice.").

the merits of the privilege claim,'" and emphasized that "[p]rivilege log entries which simply state

that documents or correspondence concern[] legal advice lack sufficient information for the court

or other parties to determine the applicability of the privilege." *Id.* (citing *EEOC*, 876 F.3d at 697).

The log entries for the OSAT communications in this case "do more than simply state legal

advice." *Firefighters' Retirement System*, 2018 WL 305604, at *6; *see also* Rec. Doc. 155-1, at

14–15 (arguing that the Order "establishes a presumption that BP's IH and OSAT work is

privileged whenever its privilege log describes documents as containing legal advice or sent for

'legal' review to attorneys").  It is evident from each description that they establish the respective

privileged document is (1) a confidential communication, (2) between a lawyer or his subordinate

or representative, and (3) made for the primary purpose of securing either a legal opinion or legal

services, or assistance in some legal proceeding. *See Robinson*, 121 F.3d at 974. See Log Entry

No. 85, which describes the privileged communication as follows:

> Discussion between BP in-house counsel, BP representatives, and
> BP contractors regarding attorney-created draft letter to state of
> Florida concerning tar ball toxicity data and attorney request for
> information regarding same.

(Rec. Doc. 138-4, BP's Privilege Log, Log Entry No. 85).[35] In addition to sufficing the above-

stated requirements, and unlike the deficient log entries in *Slocum*, the entries presently before the

Court contain an adequate factual basis for determining the application of privilege from the log

alone. 549 F. Supp. 3d at 525.

---

[35] *See, e.g.*, Rec. Doc. 138-4, Log Entry No. 82 ("Internal legal discussion between BP counsel regarding Environ report on Florida health benchmarks; [BP] counsel request for information on same"); Log Entry No. 84 ("Comments from BP representative to BP in-house counsel regarding BP counsel request for information on Environ report on Florida benchmarks"); Log Entry No. 85 ("Discussion between BP in-house counsel, BP representatives, and BP contractors regarding attorney-created draft letter to state of Florida concerning tar ball toxicity data and attorney request for information regarding same"); Rec. Doc. 143, at 15 n.34 (explaining that, contrary to Plaintiff's claim that BP-JGremillion_0004774 (a/k/a Log. Entry No. 89) included data that was not produced, the underlying data was produced at a separate bates number (CTEH – Culliver_01959687, 01967076, 01985257)).

Plaintiff also contends that the Order makes "pronouncements similar to those the Fifth Circuit rejected in [*EEOC v. BDO USA, L.L.P.*, 876 F.3d 690 (5th Cir. 2017)],"[36] so the Court turns its analysis to that decision. There, the EEOC sought production of information relating to an employment discrimination investigation and asserted that the defendant's privilege log failed to establish that the attorney-client privilege protected the company's withheld documents. *Id.* at 694. The aggrieved employee in the matter, Ms. Hang Bower, held the position of Chief Human Resources Officer and, while employed at BDO, she was responsible for investigating discrimination complaints and communicated with both in-house and outside counsel. *Id.* The presiding magistrate judge denied the motion to compel and, on appeal to the district court, the EEOC attached an affidavit to the objections signed by the former Chief Human Resources Officer maintaining, among other things, that:

> [The] emails exchanged between [Bower] and other non-attorneys pertaining to these investigations were made for the primary purpose of conveying business directives or factual information. Bower further claimed that, in order to protect communications from disclosure in future legal proceedings, BDO required her to forward to or courtesy copy in-house counsel on virtually all communications pertaining to employee investigations and to include in HR-related emails a false designation that the communication was prepared "at the request of legal counsel."

*Id.* at 695. The district court overruled the EEOC's objections and the Fifth Circuit later reversed, holding that the magistrate judge's ruling amounted to an improper shifting of the burden from the party asserting the privilege to the EEOC. *Id.* at 697. Given the "serious nature" of the allegations in Bower's declaration and the "lack of a countering affidavit" from BDO, the Fifth Circuit further noted that an *in camera* review would likely be necessary. *Id.* at 697 n.4.

---

[36] Rec. Doc. 155-1, at 14.

The relevant "pronouncements" articulated by the Fifth Circuit in the *EEOC* decision include (i) that "[t]here is no presumption that a company's communications with counsel are privileged,"[37] (ii) "communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, [are not] privileged, nor are documents sent from one corporate officer to another merely because a copy is also sent to counsel,"[38] (iii) "simply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege,"[39] and (iv) "this circuit [has] explained that where there is a mixed discussion of business and legal advice, courts should consider the 'context . . . key,' ultimately seeking to glean the 'manifest purpose' of the communication."[40]

Considering the foregoing principles in the context of the OSAT communications leads this Court to the same legal conclusion as the Magistrate Judge. First, the Order expressly states that, "[i]n a corporate setting, the attorney-client privilege applies to communications with in-house counsel when the communications are 'made for the purpose of giving or obtaining legal advice or services.'"[41] Second, the Order does not find, as Plaintiff insinuates,[42] "that privilege 'automatically attach[es] to in-house counsels' communications regarding monitoring and sampling' because litigation was certainly anticipated by BP"; it explains that a foundational

---

[37] *EEOC*, 876 F.3d at 696 (citing *TVT Records v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 148 (S.D.N.Y. 2003) and *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011)).

[38] *EEOC*, 876 F.3d at 696 (first quoting *Great Plains Mut. Ins. Co. v. Mut. Reinsurance Bureau*, 150 F.R.D. 193, 197 (D. Kan. 1993), then citing *Freeport–McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, No. 03-1496, 2004 WL 1299042, at *25 (E.D. La. June 4, 2004)).

[39] *EEOC*, 876 F.3d at 696 (citing *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996)).

[40] *EEOC*, 876 F.3d at 696 (quoting *Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 382 (5th Cir. 2014)).

[41] Rec. Doc. 153, at 2.

[42] *See* Rec. Doc. 155-1, at 12 ("Further, the Order *appears* to make the finding that privilege . . . .") (emphasis in original).

component of this profession is the communication between a client—whether they are knowledgeable in the law or not—and an attorney for the purpose of developing a legal strategy, which is what the challenged log entries establish.[43] Third, as explained in greater detail *infra*, the privilege log did not "simply describe[e] a lawyer's advice as 'legal.'" And fourth, the Magistrate Judge was well-positioned to understand the underlying context of the asserted privileges, the motion, and this case.[44] *See Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 382 (5th Cir. 2014). In other words, he fully considered the "manifest purpose" of the challenged communications. *Id.*

The Court further notes that Plaintiff contends "BP was *required* to substantiate its assertions 'by affidavit, deposition transcript, or other source,'"[45] but offers no binding authority to support this contention. There is clear Fifth Circuit precedent that BP bears the burden of making a preliminary showing that the matter is eligible for protection, *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 n.7 (5th Cir. 2001), but the Court is unaware of binding authority requiring BP to offer extrinsic evidence to support for a privilege log that is otherwise compliant on its face with

---

[43] Rec. Doc. 153, at 7–8.

[44] *See* Rec. Doc. 153, Mag. J.'s Ord. Den. Pl.'s Proposed Mot. to Compel, at 2 (noting "This is the eighth in a collection of discovery motions filed by the parties in this case, many of which raised the very issues in the motion now before the Court.") (signed April 8, 2025); Rec. Doc. 75, Mag. J. Minute Entry (granting Plaintiff's motion to compel and for *in camera* sampling of certain documents) (signed July 11, 2024); Rec. Doc. 89, Mag. J. Supp. Ord. (requiring BP to "review their privilege log and each withheld document therein to confirm or deny that each document is properly designated as privileged) (signed Oct. 9, 2024); Rec. Doc. 141, Mag. J.'s Ord. Den. Pl.'s Mot. for Status Conf. (Mar. 17, 2025),

> Plaintiff seeks a status conference to discuss issues that this Court has already adjudicated on numerous occasions. (Rec. docs. 57, 75, 89, 94). This Court sees no reason to revisit those issues, and Plaintiff fails to convince the Court otherwise. Plaintiff had ample opportunity to challenge BP's privilege log in her earlier motion, and now is not the time to attempt to raise new arguments to challenge that log. This Court performed the in-camera review of a sampling of BP's withheld documents that Plaintiff sought and ultimately found that BP's re-review of the withheld documents satisfied this Court's earlier Orders. (Rec. doc. 94). This Court will not reconsider its Orders.

[45] Rec. Doc. 155-1, at 8 (quoting *Jolivet v. Compass Grp.*, 340 F.R.D. 7, 32 (N.D. Tex. 2021)) (emphasis added).

Federal Rule of Civil Procedure 26.[46] And the Fifth Circuit noted just that when it "reiterate[d] that although Rule 26 'does not define for each case what information must be provided,' a privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[] the merits of' the privilege claim." *EEOC*, 876 F.3d at 697 (citations omitted).

As such, Plaintiff's objections related to her first topic area are overruled.

### 2. *Documents Related to Industrial Hygiene Data*

Plaintiff's second topic area concerns documents that "include discussions of environmental sampling data and validation procedures, routine conference call agendas and notes related to the creation or QA/QC of exposure or 'dose' data used by the Parties' experts, and communications discussing response efforts."[47] In her motion to compel, Plaintiff asserted that "[t]hese topics generally concern ordinary course of business functions that would have occurred without litigation, as BP was purportedly focused on obtaining data that would ensure response workers' and communities' health and safety and compliance with OSHA or other regulations."[48] Her motion argues that BP has (i) "failed to meet its burden to prove that attorney-client or work product privilege applies to any of the documents," and that BP (ii) fully withheld many documents that contained underlying factual data instead of making reasonable redactions."[49]

---

[46] *See In re Santa Fe*, 272 F.3d at 710 ("In complex litigation, compliance with Rule 26(b)(5) is 'usually accomplished by submission of a log identifying documents or other communications by date and by the names of the author(s) and recipient(s), and describing their general subject matter . . . .'" (quoting Manual for Complex Litigation (Third) § 21.431 (1995)); *see also* Ann. Manual Complex List. § 11.431 n.125 (Fourth) (explaining that "Rule 26(b)(5) does not specify the information that must be provided, which may depend on the nature and amount of material withheld").

[47] Rec. Doc. 138-1, at 3.

[48] Rec. Doc. 138-1, at 18.

[49] Rec. Doc. 138-1, at 3.

In response to Plaintiff's motion, BP maintained that "[t]he challenged documents involve either communications with or involving attorneys discussing strategy associated with monitoring and sampling or documents that include attorney comments or revisions" and emphasized that BP's "involvement in these technical decisions was not to manage the technical aspects, but to advise on the legal implications of these actions in response to the particular circumstance caused by the oil spill."[50] Regarding the underlying data, BP noted that courts have previously "affirmed the privileged workstreams associated with data collected by [third-party consultants]," and explained that the underlying data Plaintiff seeks is publicly available.[51]

On appeal, Plaintiff maintains her argument that "BP's emails to scientists about IH data and data validation protocols—even if copied to attorneys—also served operational goals such as complying with health agency regulations and ensuring worker safety," and that "[c]opying counsel on [an] email sent for business purposes is insufficient to establish the privilege."[52] She further contends that "[t]he findings of the [Northern District of Florida] are not a substitute for a fact specific analysis of each document's content and purpose," and that "[t]he Order thus erred by failing to review the individual documents Plaintiff identified and, instead, relying on privilege determinations from distinct disputes over different documents in another jurisdiction."[53] As it concerns BP's arguments in opposition to the underlying motion to compel, she also notes that it failed to "contradict the evidence showing that BP's legal team often conducted non-legal work."[54]

---

[50] Rec. Doc. 143, at 12–13.

[51] Rec. Doc. 143, at 14.

[52] Rec. Doc. 155-1, at 17–18.

[53] Rec. Doc. 155-1, at 11–12.

[54] Rec. Doc. 155-1, at 18 (citing Rec. Doc. 68-1).

As a threshold matter, the Court disagrees with Plaintiff's contention that the Magistrate Judge arrived at his legal conclusions by "*failing to review* the individual documents Plaintiff identified and, instead, relying on privilege determinations from distinct disputes over different documents in another jurisdiction." To the contrary, the Order expressly states:

> The documents Plaintiff seeks contain communications with or involving attorneys discussing strategy associated with monitoring and sampling or documents that include attorney comments or revisions. The privilege log reveals that the counsel involved include outside attorneys . . . . [T]he Court finds that these documents fall within the purview of the attorney-client privilege and/or the work-product privilege. . . . [T]he only relevant question for each and every document that Plaintiff seeks is whether it contains protected legal advice or attorney work product, not its underlying topic.

(Rec. Doc. 153, Mag. J.'s Order Den. Proposed Mot. to Compel Defs.' Docs., at 11–12 (citations omitted)). The law is clear, as noted in the Order, that the test for assessing the adequacy of a privilege log is conducted on an entry-by-entry basis, *see Slocum*, 549 F. Supp. 3d at 525; but the law does not state that the presiding judge must give their reasons on an entry-by-entry basis.

The Court also finds that the Magistrate Judge properly determined: (i) BP's "counsel's involvement in these technical decisions was not to manage any technical aspects or reactions but to advise on the legal implications of these reactions in response to the particular circumstances and guaranteed future litigation,"[55] and (ii) "Plaintiff's apparent need for the legal discussions that involved the collection [of data] . . . is bellied by . . . the availability of such data to her in the public sphere." *Ecuadorian Plaintiffs*, 619 F.3d at 377.

---

[55] On June 11, 2025, Plaintiff sought leave of court to file supplemental evidence in support of her objections, which this Court granted. *See* Rec. Doc. 172. Through her motion she asks the Court to consider the expert report of BP expert Pamela Williams for the purpose of demonstrating that the challenged industrial hygiene documents have their primary purpose rooted in litigation defense. BP did not oppose the motion, but did file a response. *See* Rec. Doc. 177. The Court is unpersuaded by Plaintiff's arguments.

The Court is mindful, however, of the Fifth Circuit's admonishment in *EEOC*, that "although Rule 26 does not define for each case what information must be provided, a privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to test the merits of' the privilege claim." *EEOC*, 876 F.3d at 697 (cleaned up; citations and quotations omitted). After careful review of the log entries relevant to this topic area, the Court finds that the Order is not clearly erroneous. But, out of an abundance of caution, it nonetheless directs the Magistrate Judge to review two entries *in camera*: (1) Log Entry No. 241 ("Discussion among client representatives concerning attorney's legal advice regarding lab analyses")[56] and (2) Log Entry No. 851 ("Discussion among client representatives regarding attorney's legal advice regarding procedure concerning non-representative sampling results.").[57] The Court exercises caution here for the reason that, although both entries are marked as protected under the attorney client privilege, their narratives do not appear to "set forth specific facts that, if credited, would suffice to establish each element of the [attorney-client privilege]." *EEOC*, 876 F.3d at 697 (quoting *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) (cleaned up)).

Accordingly, the BP shall produce Log Entry Nos. 241 and 851 in unredacted form to the Magistrate Judge for *in camera* review within 7 days of this Order.[58] The Magistrate Judge shall also consider the documents under relevant standards for the work product privilege.

---

[56] Rec. Doc. 138-4, at 6.

[57] Rec. Doc. 138-4, at 6.

[58] *See Civic Ctr. Dev., LLC v. Certain Underwriters at Lloyd's Lon.*, No. 23-1071, 2023 WL 5974843, at *4 (E.D. La. Sept. 14, 2023) (Currault, Mag. J),

> When faced with an inadequate privilege log, the court may: (1) permit the party another chance to submit a more detailed log; (2) deem the inadequate log a waiver of the privilege; (3) conduct an *in camera* inspection of the withheld documents; or (4) conduct an in camera inspection of a select sample of the withheld documents. . . . [O]nly when there is a sufficient evidentiary showing that an issue exists regarding the application of a privilege must the court utilize

### 3.   Documents Related to Dr. Paul Hewett's Industrial Hygiene Work

Plaintiff's third topic area concerns industrial hygiene related communications between (i) BP employees and BP in-house counsel and/or outside counsel, and (ii) an independent contractor (Dr. Paul Hewett) and BP employees, in-house counsel, and/or outside counsel.[59]  In her motion to compel, Plaintiff argued that the challenged communications were not privileged because the Industrial Hygiene workstreams for oil spill response operations were neither related to litigation defense work for BP nor performed at the direction of counsel in anticipation of litigation.[60] She posited that "[The IH] work was technical in nature and used to support response operations."[61] In the case of Dr. Hewett, she further noted that "even by November 2010, Hewett had still not signed any contract with BP and his fee schedule specified his work was 'non legal' only."[62] For these reasons (and others discussed *infra*), Plaintiff argued that the following documents and communications contained within are protected from disclosure under the attorney-client privilege: Log Entry Nos. 24, 25, 30, 31, 62, 65, 66, 67.[63]

In opposition to Plaintiff's motion to compel, BP explained that Dr. Hewett performed certain privileged and non-privileged work and asserted that (i) the challenged communications and documents were shared between Hewett and outside counsel and (ii) the privilege claims are consistent with Dr. Hewett's testimony.[64] It further argued that "Dr. Hewett's work for BP

---

its discretion to determine whether *in camera* review is appropriate under the circumstances presented.

(footnotes omitted).

[59] Rec. Doc. 138-1, at 2.

[60] Rec. Doc. 138-1, at 2.

[61] Rec. Doc. 138-1, at 2.

[62] Rec. Doc. 138-1, at 2.

[63] Rec. Doc. 123-1, at 2.

[64] Rec. Doc. 143, at 8.

attorneys did not lose its privilege protection simply because a prior contract did not expressly indicate Hewett's work was to be, in part, legal."[65] It also noted that Plaintiff's argument—that BP would have conducted sampling and monitoring regardless of whether litigation followed from the oil spill—"ignores reality," and has been squarely addressed by other courts.[66]

In denying Plaintiff's motion, the Order first addressed the fee agreement issue, explaining:

> Plaintiff concentrates on the fee agreement between Hewett and the BP Defendants, arguing that nothing in the contract contemplated legal work. Plaintiff's argument misses the mark. The attorney-client and work-product privileges are not controlled by the terms of a contract, but by the nature of the work performed. To determine whether the work-product privilege shields a document from production, the Court need only find that the motivating purpose behind its production was in "anticipation of litigation."

(Rec. Doc. 153, Mag. J.'s Order Den. Proposed Mot. to Compel Defs.' Docs., at 7 (quoting *Stoffels*, 263 F.R.D. at 418)).

The Order then turned to Plaintiff's contention that Dr. Hewett's dual role precluded protection by the attorney-client and work product privilege, noting that the contention is an attempt to recycle a failed argument from the *Culliver* case.[67] The Magistrate Judge explained that Dr. Hewett's work is privileged because, like the expert in *Culliver*, he was retained in anticipation of litigation to perform consulting work with BP's attorneys.[68] The Order also addressed Plaintiff's "generic and conclusory argument – that the BP Defendants withheld factual data in privileged documents,"[69] and found it meritless because "[t]he underlying breathing zone and other factual

---

[65] Rec. Doc. 143, at 9.

[66] Rec. Doc. 143, at 12.

[67] Rec. Doc. 153, at 8.

[68] Rec. Doc. 153, at 8.

[69] Rec. Doc. 153, at 8.

data that Plaintiff seeks has been public for years and has been the subject of extensive fact, corporate, and expert discovery."[70]

On appeal, Plaintiff asserts that "the Order misapplies Fifth Circuit standards for in-house counsel communications by conflating legal advice with routine business oversight" and stresses to the Court that, regardless of which privilege is asserted, the facts underlying any communication are not protected.[71] As such, she maintains that emails to scientists regarding industrial hygiene data and/or data validation protocols are not protected under either privilege—regardless of whether an attorney was copied—on the basis that the communications ultimately "served operational goals such as complying with health agency regulations and ensuring worker safety."[72] As it concerns the industrial hygiene documents and communications, Plaintiff contends that the Order failed to "complete the work product analysis" by not affirmatively establishing that the primary purpose of each document was to aid in litigation.[73]

Here, just as with the OSAT communications, the Court remains mindful that a privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to test the merits of the privilege claim. *EEOC*, 876 F.3d at 697. Having reviewed the Order and considered the parties' arguments on appeal the Court finds that all but one document was properly withheld under the attorney-client privilege. The remaining document was improperly designated as attorney-client privileged, but is privileged work product nonetheless, so there is no clear error.

---

[70] Rec. Doc. 153, at 8–9.

[71] Rec. Doc. 155-1, at 17.

[72] Rec. Doc. 155-1, at 17.

[73] Rec. Doc. 155-1, at 22.

The Magistrate Judge did not err in finding that Log Entry Nos. 24, 25, 30, 31, 65, 66, and 67 are protected under the attorney-client privilege or work product privilege for the following two reasons. First, each entry is addressed from a client representative directly to outside counsel. *See Ictech-Bendeck*, 2024 WL 247063, at *5 (the attorney client privilege covers confidential communications made by a client to his lawyer for the purpose of obtaining legal advice); *In re Liprie*, 480 B.R. 658, 663 (Bankr. W.D. La. 2012) ("The privilege may also extend to a client's or attorney's representatives to the extent that the presence of those representatives furthers the provision of legal services to the client."); Fed. R. Civ. P. 26(b)(3)(A). Second, the narrative descriptions are sufficient to test the merits of the privilege claim.[74] *See EEOC*, 876 F.3d at 695 (the attorney client privilege requires (1) a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding); *In re Kaiser*, 214 F.3d at 593 ("The law of our circuit is that the privilege can apply where litigation is not imminent, as long as the primary motivating purpose

---

[74] *See, e.g.*, Rec. Doc. 138-4, at 3–4:

Log Entry No. 24:    Information and documents provided to attorney to solicit legal advice/provide legal instruction regarding industrial hygiene analysis.

Log Entry No. 25:    Draft document provided to attorney in response to attorney request for information concerning industrial hygiene analysis.

Log Entry No. 30:    Response to attorney request for information concerning industrial hygiene analysis.

Log Entry No. 31:    Client representative request for attorney comment and advice concerning draft industrial hygiene analysis document.

Log Entry No. 65:    Draft industrial hygiene analysis presented to attorneys for the purpose of legal review.

Log Entry No. 66:    Draft industrial hygiene analysis presented to attorneys for the purpose of legal review.

Log Entry No. 67:    Attorney draft/edit of document reflecting legal advice regarding document discussing appropriate action levels.

behind the creation of the document was to aid in possible future litigation.) (quotations and citations omitted).[75]

Log Entry Number 62, on the other hand, is insufficient to establish the challenged document falls within the purview of the attorney-client privilege for the reason that, despite being labeled as protected under the attorney-client privilege and described as "presented to attorneys for the purpose of legal review," it was not made to an attorney.[76] But the document was properly withheld as privileged work product because a review of the record, including deposition excerpts and the privilege log, establishes as follows: (i) Dr. Hewett "was occasionally asked by BP attorneys to produce a graph or statistical analysis for [BP's] specific purposes";[77] (ii) Dr. Hewett's primary point of contact at BP was Cheryl Metzler (an industrial hygienist);[78] (iii) Dr. Hewett confirmed that he occasionally submitted analyses directly to BP attorneys upon "special request";[79] and (iv) a "draft hygiene analysis" (bearing the file name "PHewett – Analysis Update 2010 12 07.ppt") was shared by Dr. Hewett to Ms. Metzler on December 7, 2010, and two days later the same document was sent by Dr. Hewett directly to Ms. Metzler and BP's outside counsel along with a document titled "Justification for the Selection of Action Levels for Volatile Organic

---

[75] The Court's findings are guided in-part by the Supreme Court's opinion in *Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981). There, the Court considered the attorney-client privilege and the work product privilege in the corporate context and aptly noted that

> [It is the] [m]iddle–level—and indeed lower–level—employees [who], by actions within the scope of their employment, [can] embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties.

*Id.*

[76] *See* Rec. Doc. 138-14

[77] Rec. Doc. 138-7, at 6 (Hewett Dep. 35:19-23).

[78] Rec. Doc. 142-1, at 7 (Hewett Dep. 120:10-12).

[79] Rec. Doc. 142-1, at 7 (Hewett Dep. 120:23-24)

Hydrocarbons."[80] *See In re Blessey Enters., Inc.*, Nos. 08-235, 08-244, 2009 WL 5915367, at *1 (M.D. La. Dec. 7, 2009) ("When determining the applicability of the work product doctrine, the court must consider the nature of the document, and the facts surrounding its creation and distribution." (citing *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993)).

As such, Plaintiff's objections related to her third topic area are overruled.

### B. Exceptions to the Work Product Doctrine do not apply.

On appeal, Plaintiff argues that she has a "substantial need for the requested information, yet the Order did not analyze the factors to obtain fact work product," and instead "adopted BP's bald assertion that all data is publicly available and purportedly relied on by numerous academic papers even though that claim is false."[81] For the following reasons, the Court disagrees.

First, the Magistrate Judge expressly concluded that BP's "counsel's involvement in these technical decisions was not to manage any technical aspects or reactions but to advise on the legal implications of these reactions in response to the particular circumstances and guaranteed future litigation";[82] accordingly, he explained that the communications were made for the primary purpose of giving legal advice and/or in the aid of future litigation.

Second, a review of the motion to compel reveals that, while Plaintiff broadly posited that she "has the ability and need to test the veracity of exposure data," her motion only expressly claims a "substantial need" for the data underlying a single log entry—Log Entry No. 89.[83] In justifying her substantial need, she explained (i) that the data "goes to the heart of Gremillion's

---

[80] Rec. Doc. 138-4, at 10.

[81] Rec. Doc. 155-1, at 24.

[82] Rec. Doc. 153, at 11.

[83] Rec. Doc. 138-1, at 29–30.

case," (ii) that the "ephemeral sampling data likely is unpublished since it was withheld," and (iii) she "cannot obtain it from other sources and has substantial need for the information for her exposure experts and rebuttal reports."[84] But as BP pointed out in its response, the data Plaintiff sought was already produced.[85]

Third, Plaintiff conceded in her reply that Log Entry No. 25 (titled "Voided Samples Context by Vessel-Date Range") is "[Industrial Hygiene] fact work product," but argued for the first time that she has a substantial need for this data, and that she has done so "through the declaration of Dr. Rothman, her expert witness."[86] But Dr. Rothman's declaration does not articulate a substantial need for this specific work product—or any specific work product, for that matter.[87] The declaration concludes that:

> Based on my review, I maintain that the data reported in GRIIDC cannot be used without understanding how and why BP modified some of the data reported in the GRIIDC database. Therefore, I recommend that scientific communications between BP and their Database Group, Data Validators, and BDO (and other Analytical Laboratories, if applicable) be made available to the Plaintiffs since I could not confirm all of the Data Validation Actions in the GRIIDC data, and therefore, conclusions made based on these GRIIDC data, are suspect.

(Rec. Doc. 57-6, Decl. Dr. Nancy Rothman, ¶ 14 (signed Jan. 10, 2024)). This conclusion—"that the data reported in GRIIDC cannot be used without understanding how and why BP modified some of the data reported in the GRIIDC database"—is unpersuasive for the purpose of establishing Plaintiff's substantial need as it relates to the production of this work product because

---

[84] Rec. Doc. 138-1, at 29–30.

[85] Rec. Doc. 143, at 15 n.34 ("Counsel is mistaken as the data was produced at CTEH – Culliver_01959687; CTEH – Culliver_01967076; CTEH – Culliver_01985257.").

[86] Rec. Doc. 147, at 9–10.

[87] *See* Rec. Doc. 57-6.

Plaintiff has failed to establish how it implicates the data she presently seeks.[88] This is bolstered by the fact that the exact same affidavit (signed in January 2024) has been presented in multiple other similar cases in this litigation.[89]

Accordingly, the Plaintiff's objections based on her substantial need are overruled.

## II.    Plaintiff's Motion for Leave to Permit Plaintiff's Experts' Rebuttal Reports (Rec. Doc. 167)

On January 16, 2025, the Court extended all unexpired deadlines in this case to be reset at a phone conference on March 27, 2025 with the express instruction that the parties submit to the Court a joint proposed case management order.[90] Included among the unexpired deadlines were the parties' respective deadlines to produce expert reports. The Court adopted the parties' proposed case management order, which contained a footnote stating:

> At the time the parties submit this Amended Scheduling Order, Plaintiff anticipates a need for her need to submit rebuttal reports and therefore reserves the right for the Court to consider them when issuing an Amended Scheduling Order. That said, Plaintiff will, at a later date, determine whether her need exists and, if so, will formally move this Court for permission to submit them.

(Rec. Doc. 150, Am. Scheduling Order, at 1 n.1).

As she anticipated, Plaintiff moved this Court for leave to file rebuttal reports on June 10, 2025.[91] In support of her motion, Plaintiff argues that rebuttal reports are necessary because (i)

---

[88] The Court also notes that courts in this District have consistently found that the data contained in GRIIDC is high quality. *See, e.g.*, *Harrison v. BP Expl. & Prod. Inc., et al.*, No. 17-4346, 2022 WL 2390733, at *7 (E.D. La. July 1, 2022) (Morgan, J.) ("[T]here is a 'massive quantity of high-quality environmental data' in the universe of literature associated with the Deepwater Horizon oil spill.").

[89] *See, e.g.*, Rec. Doc. 138-1, at 8 n.48 (citing *In re Deepwater Horizon BELO Cases*, Case No. 19-cv-00963, Rec. Doc. 713-2 (N.D. Fla. Apr. 22, 2024)).

The Court further notes that a review of affidavit's substance gives rise to additional questions regarding its relevance and reliability, but it need not address those concerns given its failure (based on overbreadth) to establish Plaintiff's substantial need for the fact work product she seeks.

[90] Rec. Doc. 114.

[91] *See* Rec. Doc. 167.

"BP submitted six (6) expert reports on numerous scientifically complex issues that include untested and unaddressed rebuttals to Plaintiff's expert reports," and (ii) "BP's expert reports suffer from methodological deficiencies, incorrect assumptions or facts, and misleading statements that unfairly attack the credibility and opinions of Plaintiff's experts."[92] The motion seeks leave to produce rebuttal reports from the following experts: David Savitz, Nancy Rothman, Shaun Crawford, Uri Simonsohn, and Jill Powder.[93]

BP opposes Plaintiff's motion for four reasons: "(1) Plaintiff has not shown why rebuttal reports are necessary; (2) Plaintiff seeks leave to issue rebuttal reports from experts who have already issued reports; (3) a modification of the Scheduling Order would prejudice BP; and (4) Plaintiff's counsel has abused the privilege of rebuttal reports in prior cases."[94]

Federal Rule of Civil Procedure 16(b) allows scheduling orders "to be modified only for good cause and with the judge's consent." The "good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (internal citations omitted). Courts also consider: "(1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice." *Squyres v. Heico Cos.*, 782 F.3d 224, 237 (5th Cir. 2015); Wright & Miller, *Modifying Scheduling Orders*, 6A Fed. Prac. & Proc. Civ. § 1522.2 (3d ed. 2023) (collecting cases). Plaintiff's motion seeks leave to serve rebuttal reports from three experts who have already issued reports

---

[92] Rec. Doc. 167-1, at 1.

[93] Rec. Doc. 167-1, at 9–11.

[94] Rec. Doc. 176, at 1.

and been deposed (Drs. Savitz, Crawford, and Powder)[95] and two experts who have not yet issued a report (Drs. Rothman and Simonsohn).[96]

With respect to the three experts who have already issued reports and been deposed (Drs. Savitz, Crawford, and Powder), the motion is granted to the extent that these experts may each submit a narrowly tailored rebuttal report that is limited to "address[ing] and refut[ing] new methodologies, opinions, and data introduced by BP's experts."[97] As it concerns the two experts who have not already issued reports or been deposed, the motion is denied as to Dr. Rothman and granted as to Dr. Simonsohn.

The Court denies Plaintiff's motion as it relates to Dr. Rothman because the record makes clear that she intended to rely on Dr. Rothman as an expert witness in this matter prior to the expert deadline, but attempted to bypass criticism of such a report by seeking instead to have the report admitted on rebuttal. By way of example, over a year ago she cited Dr. Rothman's January 2024 declaration to support her assertion that:

> While BP is anticipated to argue that the NRDA data final results and summaries are already available on websites or were produced through discovery, and will likely make bald assertions that all of the Deepwater Horizon Oil Spill ("DWH") data was collected under "rigorous" quality assurance and data validation standards, those arguments are misleading and not true.

(Rec. Doc. 57-1, Pl.'s Mot. to Compel Def. Stantec's Docs, at 16 (citing a declaration of Nancy Rothman signed on January 10, 2024 (Rec. Doc. 57-6)) (filed June 10, 2024)). And in March of this year—over a week before her expert deadline—she relied upon the same declaration for the

---

[95] Rec. Doc. 176, at 5. The Court acknowledges, however, that in *Boggs v. BP Exploration & Production, Inc., et al.*, No. 16-13476, Rec. Doc. 202, at 4 (E.D. La. Oct. 11, 2024), the plaintiff's experts had the opportunity to rebut BP's expert opinions during their depositions because those depositions occurred after the defendants disclosed their reports. Rec. Doc. 178, at 2.

[96] Rec. Doc. 176, at 7.

[97] Rec. Doc. 178, Pl.'s Reply in Support of Mot. for Leave to Permit Pl.'s Experts' Rebuttal Reports, at 1.

purpose of establishing that she has a substantial need for work product such that it overcomes the

protections afforded by the privilege. In doing so, she expressly stated:

> But Plaintiff has shown substantial need through the declaration of
> Dr. Rothman, her expert witness. . . . [P]laintiff's expert testimony
> and document evidence establish that the public databases BP
> implies contain all the necessary information are inadequate and
> discovery of fact work product is likely to reveal important evidence
> of how the sampling data is unreliable.

(Rec. Doc. 147, Pl.'s Reply in Response to BP's Opp. to Pl.'s Mot. to Compel Defs.' Docs., at

10).[98] She now argues in her reply that:

> Dr. Rothman's expert rebuttal is expected to reveal systematic errors
> including misrepresented benzene readings, tar ball composition,
> and critical omissions of audit findings that demonstrate that BP's
> experts used unreliable flawed data. . . . [D]r. Rothman's rebuttal
> will provide a scientifically-rigorous evaluation of BP's experts.

(Rec. Doc. 178, Pl.'s Reply in Resp. to Mot. to File Rebuttal Report, at 5).

The Court is also aware that Plaintiff was granted leave to produce a rebuttal report issued

by Dr. Rothman in *Boggs v. BP Exploration & Production, Inc., et al.*, a case pending before Judge

Morgan, in October 2024.[99] And the grounds Plaintiff cited in support of her motion there are

markedly similar to those presently before the Court.[100]

Accordingly, it is clear to the Court that Plaintiff expressly intended to rely on Dr.

Rothman's testimony in this matter, but rather than comply with the deadline contained within the

---

[98] *See also* Rec. Doc. 147, at 10 n.47 (citing the Rothman Declaration); Rec. Doc. 138-1, at 8.

[99] *See Boggs v. BP Expl. & Prod.*, No. 16-13476, Rec. Doc. 202, at 4 (E.D. La. Oct. 11, 2024).

[100] *Compare* Rec. Doc. 167-1, Mot. for Leave to Permit Pl.'s Experts' Rebuttal Reports, at 8–9 ("[T]he designation of additional experts (rebuttal experts) has become necessary in light of the broad and unanticipated scope of BP's expert case-in-chief reports and reliance materials. The expansive nature of these new opinions, which go well beyond what was reasonably anticipated, requires Plaintiff to designate additional experts to adequately respond."), *with Boggs*, No. 16-13476, Rec. Doc. 179-1, at 11 ("[T]he designation of additional experts to address new BP expert opinion testimony and reliance materials is necessary given the unanticipated scope, and wide swath of the new opinions of the BP experts.").

parties' joint-proposed case management order, she opted instead to wait and later seek leave to produce a rebuttal report so as to have the "last word."[101] This is not good cause.

As it concerns Dr. Simonsohn, the Court finds that Plaintiff has articulated good cause. BP contends that Dr. Simonsohn is "[t]he only potential rebuttal expert who has not previously issued a report," but that Plaintiff "has not provided any specifics as to why a report from him is justified."[102] But explained in her motion, "Dr. Simonsohn's rebuttal testimony will address the statistical fallacies, misapplication of epidemiological principles, and improper inference techniques in the reports authored by Dominik Alexander and Peter Shields."[103] Given the case's complexity and breadth, the Court finds that these allegations have merit and there is minimal prejudice in extending discovery for a short period to allow for the issuance of the rebuttal report. The scope of the report shall not exceed the aforementioned "statistical fallacies, misapplication of epidemiological principles, and improper inference techniques in the reports authored by Dominik Alexander and Peter Shields."

Accordingly;

**IT IS ORDERED** that Plaintiff's **Objections to Magistrate Judge's Order Denying Motion to Compel (Rec. Doc. 155)** are **OVERRULED.** Out of an abundance of caution, however, BP **shall** produce Log Entry Nos. 241 and 851 in unredacted form to the Magistrate Judge for *in camera* review within 7 days of this Order.

**IT IS FURTHER ORDERED** that **Plaintiff's Motion for Leave to Permit Plaintiff's Experts' Rebuttal Reports (Rec. Doc. 167)** is **GRANTED in-part** and **DENIED in-part.** It is

---

[101] *See* Rec. Doc. 178, at 1 (asserting that "BP's insistence on having the last word, false complaints of prejudice, and reliance on inapposite case authority smacks of gamesmanship.").

[102] Rec. Doc. 176, at 8.

[103] Rec. Doc. 167-1, at 11.

**GRANTED** to the extent that Drs. Savitz, Crawford, and Powder may each submit a narrowly tailored rebuttal report that is limited to addressing new methodologies, opinions, and data introduced by BP's experts. Any part of a rebuttal report that exceeds the aforementioned limits will be stricken. The motion is further **GRANTED** as to Dr. Simonsohn. His report must comply with Federal Rule of Civil Procedure 26 and is limited to addressing the alleged "statistical fallacies, misapplication of epidemiological principles, and improper inference techniques in the reports authored by Dominik Alexander and Peter Shields." The motion is **DENIED** as to Dr. Rothman.

   **IT IS FURTHER ORDERED** that, by **Thursday, July 31, 2025**, the parties shall jointly propose reasonable deadlines (i) for production of the rebuttal reports and (ii) to depose Dr. Simonsohn, if necessary.

   July 3, 2025

              JAY C. ZAINEY
           UNITED STATES DISTRICT JUDGE